**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:19-cv-81281-RLR**

MICHAEL A. HENRY-BEY, FKA,
MICHAEL ANTHONY HENRY

       Petitioner/Plaintiff,

v.

CHAMPERY REAL ESTATE 2015 LLC;
HECTOR CASTRO AND CARMELA BAUTISA, et al.

       Respondents/Defendants.

_____/

**RESPONDENTS/DEFENDANTS HECTOR CASTRO AND CARMELA BAUTISTA
AND SHERWOOD LAKES HOMEOWNERS ASSOCIATION, INC.'S
JOINT MOTION TO STRIKE, AND ALTERNATIVELY, DISMISS PETITION (DE1);
JOINT RESPONSE TO PETITION TO CONFIRM FINAL ARBITRATION AWARD;
AND JOINT MOTION TO VACATE SAID ARBITRATION AWARD; AND, FURTHER
ENJOIN PETITIONER**

    **COME NOW,** Respondents/Defendants, HECTOR CASTRO and CARMELA

BAUTISTA (collectively, the "Homeowners") and SHERWOOD LAKES HOMEOWNERS

ASSOCIATION, INC. (the "Homeowners Association"), by and through each of their

undersigned counsel and file this Joint Motion to Strike, and Alternatively, Dismiss

Petition (DE1); Response to Petitioner/Plaintiff's ("Former Owner") Petition to Confirm

Final Arbitration Award; and Motion to Vacate Said Arbitration Award; and, Further

Enjoin Petitioner, and in support thereof state:

**INTRODUCTION**

    The Petition to Confirm Final Arbitration Award must be stricken inasmuch as this

Court has declared the Former Owner a vexatious litigant and mandated that any

1

pleadings related to the subject real property filed by the Former Owner without an attorney licensed to practice in this Court shall be immediately stricken. In addition, the Petition should be dismissed for lack of subject matter jurisdiction. Further, the alleged Arbitration Award sought to be confirmed is fraudulent and, in point of fact, there exists no contract, whatsoever, between the Former Owner and either the Homeowners or the Homeowners Association, let alone, one with an arbitration provision. Therefore, not only should the Petition to Confirm Arbitration be stricken and/or dismissed for lack of subject matter jurisdiction, the alleged Arbitration Award should be vacated. Finally, the Former Owner should be further enjoined from filing pro se lawsuits and other judicial filings relating to the subject real property and against the Homeowners and the Homeowners Association relating to the underlying State Court Foreclosure action of the Property, which forms the basis of all the Former Owner's claims, including this Petition.

## BACKGROUND

The Former Owner's Petition to Confirm Final Arbitration Award is only the most recent of a series of vexatious, harassing, and duplicative lawsuits and other judicial filings by the Former Owner as a pro se litigant involving certain residential real property and his loss of title thereto through a state court mortgage foreclosure. A brief background and chronology of applicable facts is as follows:

1.     Homeowners own the following described property:

> UNIT C, LOT 58 OF PLAT OF SHERWOOD LAKES (P.U.D.), ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 40, PAGE 105, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA

Street Address: 1625 16th Lane, Unit C, Lake Worth, Florida 33463. (the "Property").

2.      The Homeowners Association is the governing homeowners' association for the Sherwood Lakes development of which the Property is a part.

3.      The Former Owner formerly owned the Property.   He had originally obtained title from Sandra Torres and Michele Lunsford by a Warranty Deed recorded April 24, 2003 in Official Records Book 15110, Page 807 (the "Former Owner's Vesting Deed") of the Public Records of Palm Beach County, Florida.   In connection with his original acquisition of the Property, the Former Owner executed a purchase money mortgage dated March 28, 2003 and recorded April 24, 2003 in Official Records Book 15110, Page 889 of the Public Records of Palm Beach County, Florida (the "Mortgage").

4.      On April 11, 2017, a Final Judgment of Foreclosure was entered with regard to the Mortgage in Case No. 502015CA011322XXXXMB (the "Foreclosure"). The Final Judgment was recorded in Official Records Book 29014, Page 1569 of the Public Records of Palm Beach County, Florida.   The Homeowners Association was named as a nominal Defendant in the Foreclosure action with regard to its lien rights against the Property.

5.      On May 11, 2017, following the foreclosure sale, a Certificate of Sale for the Property was issued by the Palm Beach County Clerk, which states that the Property was sold to Duke Partners II, LLC for $129,100.00 (DE 165).

3

6.      Pursuant to the Final Judgment and upon the filing of the Certificate of Sale, the Former Owner herein, as a Defendant Mortgagor therein, was foreclosed of all estate or claim in the Property and his right of redemption terminated.

7.      On July 13, 2017, a Certificate of Title was issued in favor of Duke Partners II, LLC.  The Certificate of Title was recorded July 14, 2017 in Official Records Book 29218, Page 1983 of the Public Records of Palm Beach County, Florida.

8.      On November 2, 2017, Duke Partners II, LLC conveyed the Property to Champery Real Estate 2015 LLC by a Quit-Claim Deed recorded November 13, 2017 in Official Records Book 29463, Page 283 of the Public Records of Palm Beach County, Florida.

9.      On March 7, 2018, Champery Real Estate 2015 LLC conveyed the Property to the Homeowners by a Special Warranty Deed recorded March 12, 1018 in Official Records Book 29703, Page 1023 of the Public Records of Palm Beach County, Florida.

10.     The Docket for the Foreclosure contains a total of 323 Docket Entries and more than one-half of these Docket Entries are after the Final Judgment (DE 142 in the Foreclosure action) and involve filings by the Former Owner herein, as Defendant Mortgagor therein, to challenge the Final Judgment and Foreclosure of the Property. The last substantive Docket Entry, June 15, 2018, is an Order Directing Clerk to Administratively Re-Close File for Statistical Purposes (DE 322 in the Foreclosure action) wherein the Court provided the following: "Defendant Michael Anthony Henry [the Former Owner,] is hereby prohibited from submitting any further pro se filings in

[this case] ... The Clerk of the Court Fifteenth Judicial Circuit is directed to refuse any further filings by Defendant Michael Anthony Henry relating to [this case]."

11.     On May 4, 2017, August 2, 2017, and September 5, 2017, the Former Owner filed three (3) different appeals relating to the Foreclosure in the Florida Fourth District Court of Appeals bearing Case Numbers 17-1344, 17-2449, and 17-2777, respectively.   Each such Appeal was dismissed by the Court.   With regard to Case Number 17-2449, the Fourth District, on August 16, 2017, issued a frivolous filing warning to the Former Owner.

12.     On July 25, 2017, September 1, 2017, and October 9, 2017, the Former Owner filed three (3) different Appeals of the aforementioned Fourth District Appeals with the Florida Supreme Court bearing Case Numbers 17-13088, 17-1612, and 17-1835, respectively.   Each such Appeal was dismissed or remanded to the Fourth District Court of Appeal and disposed of by that Court.

13.     Meanwhile, on September 22, 2017 and September 26, 2017, the Former Owner filed two (2) actions relating to the Foreclosure and the Property in the U.S. District Court for the Southern District of Florida bearing Case Numbers 19:17-cv-81054 and 9:17-cv-81077, respectively.   Each of these cases were dismissed by this Court.

14.     On November 28, 2017, the Former Owner filed in the U.S. District Court for the Southern District of Florida bearing Case No. 19-17-cv-81295 (the "Southern District Petition") a Petition for Writ of Habeas Corpus as to the Foreclosure. The Southern District Petition was dismissed by an Order dated November 29, 2017 (DE 4 of the Southern District Petition).   Four (4) months later, the Former Owner recorded a

5

Lis Pendens bearing the case number of the Southern District Petition against the Property, which by that time was owned by the Homeowners. Said Lis Pendens was recorded March 19, 2018 in Official Records Book 29717, Page 1467 of the Public Records of Palm Beach County, Florida.

15.   On July 19, 2018, the Former Owner filed a Complaint in the U.S. District Court for the Southern District of Florida, bearing Case No. 9:18-cv-80953-DMM relating to the Property (the "4th Southern District Case"). The 4th Southern District Case was dismissed by an Order dated December 18, 2018 dismissing Former Owner's Second Amended Complaint with Prejudice (DE 91 in the 4th Southern District Case). On March 6, 2019, the Southern District entered an Order Denying Former Owner's Motion for Reconsideration of the Order Dismissing the Case With Prejudice (DE 109 in the 4th Southern District Case). On March 12, 2019, the Former Owner filed a Motion to Vacate the Order on Motion for Reconsideration (DE 110 in the 4th Southern District Case). In addition, on May 24, 2019, despite the fact that the case remained dismissed, the Former Owner filed an Affidavit in the Nature of Motion to Compel Arbitration (DE 115 in the 4th Southern District Case).

16.   Meanwhile, on March 5, 2019, the Former Owner filed a Petition for Writ of Mandamus in the United States Court of Appeal for the Federal District bearing Case No. 2019-115 (the "Federal District Case"). By Order dated April 18, 2019, the Petition for Writ of Mandamus was dismissed. (DE 9 in the Federal District Case). There, the Court noted that a prior case filing bearing Case No. 2018-1480 (filed in the United

States Court of Appeal for the Federal District April 6, 2018), also filed by the Former Owner involving the Property, had also been dismissed for lack of jurisdiction.

17.     Importantly, when the Former Owner persisted in Case No. 9:17-cv-81077, the Southern District, as recently as June 4, 2019, issued an Order to Show Cause requiring the Former Owner to "show cause why he should not be declared a vexatious litigant and prohibited from filing <u>any</u> further documents <u>related to the tile to this Property</u> without representation by an attorney."  (DE 25) In the resultant Order Imposing Sanctions as a Vexatious Litigant dated June 18, 2019, after noting that the Former Owner responded to the Order to Show Cause with another frivolous filing, this Court declared the Former Owner a VEXATIOUS LITIGANT, and said that he "may not file <u>any</u> document in the Court record relating to this property without representation by an attorney licensed to practice in this Court.  Any pleadings related this property filed by the [Former Owner] without an attorney licensed to practice in this Court shall be immediately stricken."  (DE 26).

18.     Having been prohibited from filing any further documents related to the title of the Property without representation in the Southern District, on July 29, 2019, the Former Owner filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, a Complaint for Ejectment from Real Estate as to the Property.  He named both the Homeowners and the Homeowners Association as Defendants.  The primary basis for his claim of title entitling him to Ejectment is the alleged Arbitration Award that is the subject of the within Petition for Confirmation.

19.     Presumably, because both the Homeowners and the Homeowners Association have defended the aforementioned Ejectment action by challenging the enforceability of the purported Arbitration Award and denying that any agreement exists between them and the Former Owner, let alone one including an arbitration clause, the Former Owner has now resorted to this Court to confirm a fraudulent Arbitration Award based upon a non-existent agreement to arbitrate.

20.     On August 8, 2019, the Southern District Court entered an Order Denying Motions in the 4th Southern District Case (DE 117).  The Order denied the Former Owner's Motion to Vacate the Order on Motion for Reconsideration and further denied the Former Owner's Affidavit in the Nature of Motion to Compel Arbitration.[1]

21.     In his Statement of The Case and Facts, Former Owner appears to claim that, on January 31, 2019, he applied for Arbitration with an entity named Sitcomm Arbitration Association.   He claims that thereafter, on February 13, 2019, he and Respondents entered into a written, self-executory, binding, irrevocable contract

---

[1]     The August 8, 2019 Order Denying Motions also stated the following:

> I previously found that this Court lacks subject-matter jurisdiction over this case.  (DE 91 in the 4th Southern District Case).     Neither of Plaintiff's currently pending Motions provide any basis for the exercise of subject-matter jurisdiction.  Accordingly, I have no jurisdiction to adjudicate the merits of this case or these motions.  Moreover, Plaintiff is hereby advised that, due to the lack of jurisdiction over this case, any future motions filed by Plaintiff are likely to be stricken or summarily denied.

agreement coupled with interests.   The Respondents, of course, executed no such document and have no relationship, contractual or otherwise, with Plaintiff.

22.     In the Section of the Petition labeled "Jurisdiction," the Former Owner, at paragraph 2, identifies a "Notice of Confidential Acceptance of Value/Agreement/Counter-Offer to Acceptance of Offer (Exhibit B)."  Exhibit B to the Petition consists of rambling unconnected sentences.  As near as the undersigned can tell, this is the "Agreement" upon which the Former Owner claims respondents have a contract with him, even though it is unsigned by anyone, including him. Even a close reading of the "Agreement" did not reveal the subject or purpose of this document, and there appear to be no contractual terms or agreement to arbitrate anything contained therein.

23.     The Former Owner filed dozens of actions in several federal and state courts that all stem from the judicial mortgage foreclosure of the Property. To his dismay, he has been consistently rebuked by the judicial system at every turn in his efforts to contest and overturn the judicial mortgage foreclosure and get the Property back.

24.     Based upon the foregoing, it appears the Former Owner, having lost the Property through judicial mortgage foreclosure, has now resorted to fabricating out of whole cloth a purported consent to arbitrate and then fabricating an alleged Arbitration Award. Incredibly, the Former Owner now petitions this Court for an order confirming the fabricated Arbitration Award.

25.     The fraudulent and wholly indecipherable alleged Arbitration Award, among its many nonsequitors, states the following "7. The [Foreclosure] and any other case against claimant past and arising its, judgment(s), order(s), pleading(s), paper(s), and sentences(s) void ab inito." (Exhibit A to the Petition to Confirm Arbitration Award at page 18 of 155 of this Courts Document 1-1).  It also, allegedly, awards the Former Owner $540,000 against the Homeowners Association (at paragraph 10.d.).     The Homeowners and the Homeowners Association did not participate in any alleged Arbitration, whatsoever.

26.     The Former Owner has attached to the Petition as "Exhibit B" a two-page document that he apparently relies upon as the Agreement between he and Respondents.  It, too, is indecipherable.  Neither the names of the Former Owner, the Homeowners, nor the Homeowners Association appear anywhere in "Exhibit B" and it contains no signatures whatsoever.  Finally, the word "arbitration" does not appear once in "Exhibit B."

27.     Clearly, there is no Agreement, whatsoever, between the Former Owner and Respondents, let alone, one that provides for Arbitration.  The Former Owner, long after the 4th Southern District Case was dismissed, seemingly sought an order directing that an arbitration proceed.  There was entered on August 8, 2019, by this Court, the Order Denying Motions which denied the Former Owner's Affidavit in the Nature of a Motion to Compel Arbitration.

**LEGAL ARGUMENT**

I.    **THE PETITION OF THIS VEXATIOUS LITIGANT SHOULD BE STRICKEN.**

The Former Owner, after losing the Property in Foreclosure, has thereafter filed numerous filings described in detail in the Background section hereof.    Those proceedings can be summarized as follows: over 100 post-judgment pleadings in the State Court Foreclosure action; three (3) Appeals to the Florida Fourth District Court of Appeals; three (3) Appeals to the Florida Supreme Court; six (6) separate cases (not including this matter) in this Court;[2] and two (2) separate cases in the U.S. Court of Appeal for the Federal District.  All these cases have been dismissed.  The State Court Ejectment Action remains pending; the Respondents have pending dispositive motions and the Former Owner has moved to stay that Ejectment Action, also relating to the Property, pending the outcome of the within Petition.

As a result of these numerous filings, the courts have issued the following warnings/orders:

On September 5, 2017, in the Foreclosure, Circuit Judge Roger Colton issued an Order on Plaintiff's Renewed Motion for Order to Show Cause wherein he provided that the Former Owner "shall file no further motions with the court whatsoever unless and until he obtains Leave of Court and [he] must post $5,000 in the Court Registry."  (DE 276 Foreclosure case);

---

[2]    Four (4) of the Southern District Court cases were described in the Background Section hereof.  The other two (2) are described in Section III - THE ARBITRATION AWARD SHOULD BE VACATED AS FRAUDULENT.  These two (2) are described there because they, like the within Petition, are based upon purported legal documents fraudulently created by the Former Owner.

11

On June 15, 2018, in the Foreclosure, Circuit Judge Joseph Marx entered an Order Directing Clerk to Administratively Re-Close File for Statistical Purposes wherein he provided that the Former Owner "is hereby prohibited from submitting any further pro se filings in this Court in Case Number 50-2015CA-011322XXXXMB."  The Clerk was directed to refuse any further filings by the Former Owner in that case.  (DE 322, Foreclosure case);

One August 16, 2007, the Florida Fourth District Court of Appeals issued an Appellant Frivolous Filing Warning where it cautioned the Former Owner that further frivolous filings may result in sanctions, including the Court no longer accepting his pro se filings;

As recently as June 18, 2019, this very Court in the 19:17-cv-81077 case, in its Order Imposing Sanctions as a Vexatious Litigant, declared Former Owner a VEXATIOUS LITIGANT, and said that he "may not file any document in the Court record relating to this property without representation by an attorney licensed to practice in this Court.  Any pleadings related to this property filed by the [Former Owner] without an attorney licensed to practice in this Court, shall be immediately stricken."  (DE 26).

Injunctive restrictions on filing by abusive litigants are necessary and prudent in order to curb conduct that would impact the rights of other litigants and the Court's ability to carry out its Article III functions. *Procup v. Strickland*, 792 F.2d 1069, 1071-72 (11th Cir. 1986).  Preventing repetitive or frivolous litigation does not violate one's rights to access the Courts. *In re Chapman*, 328 F.3d 903, 905 (7th Cir. 2003).

The Former Owner's Petition for Confirmation of Arbitration Award is merely the most recent filing in his seemingly never-ending litigation related to the title of the Property. The alleged Arbitration Award is not effective because it is both fraudulent, in and of itself, and there is no underlying agreement between the Former Owner and the Respondents. Nevertheless, the alleged Arbitration Award purports to affect the title to the Property. Specifically, it states at page 16 of 21 the following: "7. The [Foreclosure] and any other case against claimant past and arising its, judgment(s), order(s), pleading(s), paper(s) and sentence(s) void ab inito."

Given this Court's recent Order Imposing Sanctions as a Vexatious Litigant, the Former Owner is prohibited, or should be, from filing pro se the Petition to Confirm Arbitration Award. Therefore, the Petition should be immediately stricken, and the matter dismissed in its entirety.

## II.    THE PETITION SHOULD BE DISMISSED DUE TO LACK OF SUBJECT MATTER JURISDICTION

### A. The Former Owner Cannot Establish A Single Basis for Federal Question Jurisdiction

The Former Owner brought this Petition against some of the persons and entities involved in the sale of the Property previously owned by the Former Owner, which he lost through state court foreclosure. The Former Owner alleges that he brings this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9 to confirm an alleged arbitration award. He claims both federal question jurisdiction and diversity jurisdiction.

Actions brought under the FAA require an independent jurisdictional basis. *Quick & Reilly, Inc. v. Saglio*, 717 F.Supp. 822, 824 (S.D. Fla. 1989). Here, the Former Owner has not properly alleged independent subject matter jurisdiction as to either federal question or diversity jurisdiction. "[A] federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if: (1) 'the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction'; or (2) 'such a claim is wholly insubstantial and frivolous.'" *Blue Cross & Blue Shield of Ala. v. Sanders,* 138 F.3d 1347, 1352 (11th Cir. 1998) (*citing Bell v. Hood*, 327 U.S. 678, 682-83 (1998)), "[S]ubject matter jurisdiction is lacking only "if the claim 'has no plausible foundation, or if the court concludes that a prior Supreme Court decision clearly forecloses the claim.'" *Id.*

The Former Owner attempts to state independent subject matter jurisdiction by asserting different bases for federal question jurisdiction.  The Former Owner first asserts that this Court has jurisdiction because the alleged Arbitration Award is a contract with the United States and that he invokes the Tucker Act for jurisdictional purposes, according to Title 28 U.S.C. § 1491.  While the Tucker Act waives the sovereign immunity of the United States as to certain claims against it and provides for jurisdiction thereof, inasmuch as the United States is not a respondent herein, it is wholly inapplicable and cannot provide federal question jurisdiction.

The Former Owner's other grounds for federal question jurisdiction are similarly lacking in plausible foundation.  After quoting 29 U.S.C. § 1331, the Former Owner alleges that this Court has jurisdiction over this matter because he asserted arbitral

claims arising under the "Laws of the United States." As pointed out earlier, actions brought under the FAA require an independent jurisdictional basis. *Quick*, at 824. Finally, the Former Owner alleges violations of the Emergency Banking Act, March 9, 1993. The Emergency Banking Relief Act of 1933, which was enacted in an attempt to stabilize the banking system, does not confer a private right of action such as to support federal question jurisdiction nor does it have any application in this Petition.

The Former Owner also cites 28 U.S.C. § 1367 as grounds for subject matter jurisdiction. Said section provides supplemental jurisdiction over all other claims that are so related to claims within the original federal question jurisdiction that they form part of the same case or controversy. *Id.* It does not provide independent federal subject matter jurisdiction by itself. Inasmuch as the Former Owner has not alleged any claims that support subject matter jurisdiction, Section 1367 is irrelevant and has no application whatsoever.

### B. The Former Owner Cannot Establish Diversity Jurisdiction

In addition to attempting to allege federal question jurisdiction, the Former Owner also attempts to allege that the Court can exercise subject-matter jurisdiction over this suit based on diversity. (DE 1 at 3). There are certain conditions that must be met before subject matter jurisdiction will exist in a diversity case that seeks to confirm an Arbitration Award. First, the jurisdictional amount must be sufficiently alleged and the parties must be citizens of different states. Further, and most importantly, the contract in which the arbitration clause is included must be one "evidencing a transaction involving

commerce." within the meaning of Sections 1 and 2 of the FAA.  *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698 (2ⁿᵈ Cir. 1985).

Where federal jurisdiction is based on diversity, the amount in controversy must exceed $75,000 and "no plaintiff [may be] a citizen of the same state as any defendant." *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268 (11ᵗʰ Cir. 2013); *see* 28 U.S.C. § 1332(a).  "Where, as here, the Petitioner asserts diversity jurisdiction, he has the burden to prove that there is complete diversity" by a preponderance of the evidence. *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11ᵗʰ Cir. 2007); *see also, Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1275 (11ᵗʰ Cir. 2000).

In his Petition, the Former Owner claims that the parties are diverse from one another because Respondents are all U.S. Citizens and Plaintiff is not one.  (DE 1 at 3).  The Former Owner appears to be claiming that, because he is a Native American, he is not a citizen of the United States and is instead a "non-citizen national" who is diverse from any defendants who are citizens of the United States.   The Former Owner is mistaken.  Pursuant to 8 U.S.C. § 1401(b), Native Americans born in the United States are citizens of the United States.  Moreover, the Supreme Court has stated that Native Americans "are citizens of the States in which they reside." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 18 n.10 (1987).  Accordingly, the Former Owner, who alleges that he is domiciled in Palm Beach County, Florida, is a Florida citizen for purposes of diversity jurisdiction.

Having determined that the Former Owner is a citizen of Florida, the Former Owner must set forth the factual allegations that he is not a citizen of the same state as

individual Respondents, the Homeowners, or as corporate Respondents, the Homeowners Association, Bank of New York Mellon, Maxim Properties, Nationstar Mortgage LLC and Bank of America Home Loan.  The Former Owner does not make such factual allegations.  He alleges the citizenship of Defendants Homeowners as Palm Beach County, Florida and does not properly allege the citizenship of any of the corporate defendants, alleging only that they do business in Florida and in the United States.  Accordingly, the Former Owner has failed to allege the citizenship of any Respondent sufficient to establish diversity jurisdiction. As such, the Former Owner has not met this prong of diversity jurisdiction.

Further, the Former Owner completely failed to include any allegations in his Petition that the transaction that is the subject of the contract that purportedly gave rise to the arbitration provision involves commerce. Even with leniency for the Former Owner as a pro se litigant, this prong was not now, and can never be, established. The Former Owner cannot meet this "commerce" condition to diversity jurisdiction in cases seeking to confirm an arbitration award, and, as such, cannot establish diversity jurisdiction in this case.

Based upon the fact that the Former Owner has failed to allege facts establishing either federal question jurisdiction or diversity jurisdiction in a case seeking to confirm an arbitration award, the Petition to Confirm Arbitration Award fails to establish subject matter jurisdiction and should be dismissed.

**III.    THE ARBITRATION AWARD SHOULD BE VACATED AS FRAUDULENT**

The Former Owner engaged the services of "Sitcomm Arbitration Association" ("Sitcomm") to preside over the alleged arbitration proceedings that resulted in the putative Arbitration Award. Although Sitcomm appears to be a company duly licensed to do business in Wyoming, this fact, in and of itself, does not make Sitcomm a legitimate arbitral body with legally binding authority. First, Sitcomm's "arbitration" services are entirely electronic in nature, and any awards that are issued are based purely on the review of documents submitted to it. Notably, Respondents neither submitted any documents to Sitcomm nor participated in any of its arbitration proceedings. Second, even on its website, Sitcomm admits that it is not licensed or regulated by the government. In fact, Sitcomm actually compares itself to the "People's Court," a television show where celebrity judges preside over personal disputes by parties who **agreed** to participate in such a non-legal proceeding. It is unclear to the undersigned how the Former Owner was able to obtain any award from Sitcomm because Sitcomm appears to understand that its arbitration proceedings require mutual consent, at least based on the information listed on its website.

Attached to the Former Owner's Petition is a document titled "Second Notice of Arbitration Award; Bill Invoice," which clearly shows that Respondents never agreed, responded, appeared, or otherwise participated in any arbitration proceedings with the Former Owner. This putative Arbitration Award was apparently entered based on Respondents' "acquiescence" and failure to appear or respond.

The fraudulent nature of this claimed arbitration is clearly evidenced in the numerous documents attached to the Former Owner's Petition. First, a document titled "Notice of Non-compliance with Final Arbitration Award" is written on Sitcomm's letterhead and contains the same style of document as all Sitcomm documents, including the putative Arbitration Award. However, this document is actually written and signed by the Former Owner. What is especially disturbing is that the Former Owner attempts to amend the putative Final Arbitration Award to triple the already egregious monetary "award." Next, a document titled "Affidavit of Certificate of Non-Response" is an attempt to certify that documents were mailed to Respondents in early 2019 and that Respondents did not provide a written response. At first glance, this document appears to be an affidavit of an individual named Patrick W. Dias. However, that is the name of the *notary*, not the affiant, who, again, is the Former Owner. None of the documents submitted by the Former Owner are valid or enforceable, but the Former Owner continues to use them as the basis for his never-ending litigation.

It should be noted that the Former Owner has a long history of misrepresenting the validity of documents and filing fraudulent papers with Courts.  In the Foreclosure case, on May 19, 2017, after the entry of the Judgment of Foreclosure, the Former Owner filed a Notice of Satisfaction of Mortgage (DE 173 in the Foreclosure Case). Therein, he claimed the Mortgage, which was the subject of the Foreclosure, was "satisfied due to all of the fraud of the debt associated with said loan number; and due to all this fraud mentioned in the attached unrebutted, 'Affidavit of Cancellation of Promissory Note and Mortgage,' which is correct at law due to acquiescence (silence)."

19

The Former Owner has similarly filed two (2) fraudulent cases relating to the Foreclosure in this Court bearing Case Numbers 9:17-mc-80117-KAM and 9:17-mc-80118-KAM. These were not described previously. Each of these cases bear the title of "Notice of Removal." The former bears the Florida Fourth District Court Case No. 4D16-4239 and the latter bears the Foreclosure Case Number. Both were docketed by this Court's Clerk's Office as a registration of foreign judgment. In both cases, Orders were issued in response to the Former Owner's Motion to Reinstate those cases. Therein this Court stated as follows: "Although the Clerk's office docketed Defendants' initial filing as a registration of foreign judgment, that was an error. It is not a certified foreign judgment, there is no order from another court permitting him to register a judgment and the court referred to by Defendants in docket entry one does not exist.[3] Simply put, the case never should have been opened in this Court as it does not comply with 28 U.S.C. § 1963." (emphasis added) (DE 7 and 9, respectively).

In sum, the Former Owner has been a fraudulent mastermind in creating documents, passing them off as legitimate, and initiating litigation in at attempt to enforce them. To date, not one of these fraudulent documents has been enforced by any court anywhere. The putative Arbitration Award that is at issue in the Former Owner's Petition is yet another one of his fraudulent documents and cannot be enforced against Respondents on any basis.

---

[3]     In each filing, the non-existent court's name on the fraudulent document is the Supreme Tribal Court of the Xi Anu nation.

## IV.    THE ARBITRATION AWARD SHOULD BE VACATED BECAUSE THERE EXISTS NO CONTRACT, WHATSOEVER

The Former Owner contends the purported arbitration proceedings related to the present case were conducted pursuant to the FAA. The FAA provides:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exists at law or equity for the revocation of any contract.

9 U.S.C. § 2

"A court's role under the FAA is ... limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Bazemore v. Jefferson Capital Systems,* LLC, 827 F.3d 1325 (11th Cir. 2016); Pro *Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (citing *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 680 (8th Cir. 2001)). In making these determinations, Court generally apply state law principles that govern contract formation*. Bazemore*, at 1329-30; Hamilton-*Warwick v. Version Wireless, No.* 16-cv-3461 (JRT/BRT), 2017 WL 1740462, at *4 (D. Minn. Apr. 12, 2017).

Before an arbitration award may be enforced against a party, the Court must engage in a limited review to ensure that the dispute "is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement" because a party cannot be bound by an "arbitral award" unless "it has agreed to arbitrate." *Bazemore*, at 1329; Daisy *Mfg. Co.*

*v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994) (citing *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)). The FAA does not require parties to arbitrate or be bound by an arbitration where the party has not agreed to be bound by arbitration. *See, E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002); 9 U.S.C. § 2. The party seeking to compel, or as in the present case enforce, arbitration has the burden of demonstrating that a valid agreement to arbitrate exists. *Rodero v. Signal Finance Co., LLC*, 365 F.Supp. 3d 1263, 1265 (U.S.D.C. SD. Fla. 2018); See, *Ikechi v. Verizon Wireless*, No. 10-cv-4554 (JNE/SER), 2012 WL 3079254, at *4 (D. Minn. July 6, 2012), (citing *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011).

It is difficult to ascertain which document in the multitude of exhibits filed by the Former Owner is alleged to contain the arbitration provision that formed the basis for the putative Arbitration Award. The Former Owner attached a document labeled as Exhibit B to this Petition. As discussed above, this seems to be the "contract" that the Former Owner contends gave rise to the putative Arbitration Award.

Although Exhibit B is identified as "Contract #" followed by a lengthy string of numbers and letters, it is nothing more than rambling unconnected sentences. Exhibit B does not impose any rights or duties and, most importantly, does not include an arbitration provision anywhere.  Pursuant to the Statute of Frauds, all agreements that cannot be completed in one year must be in writing and signed by the party against whom enforcement is sought.

No document attached as an exhibit to the Former Owner's Petition comes even close to being a valid, binding, or enforceable contract or agreement between the Former Owner and Respondents, much less one that contains an arbitration provision. Pursuant to 9 U.S.C. § 13, the Former Owner must file any such agreement with the court in order for an arbitration award to be confirmed. However, the Former Owner cannot attach such a document because no legal contract or agreement, whether written or oral, exists whatsoever between the Former Owner and Respondents.

## V.     THE FORMER OWNER SHOULD BE FURTHER ENJOINED

The Federal District Court has the power under 28 U.S.C. § 1651(a) to enjoin litigants who are abusing the Court's time by harassing their opponents. *Harrelson v. U.S.*, 613 F.2d 114, 116 (5th Cir. 1980).[4]  That inherent power extends to enjoin litigants who use the courts as a stage for their vendetta or harassment or abuse.  *Hill v. Estelle*, 423 F.Supp. 690, 695 (S.D. Tex 1976) aff. *Hill v. Estelle*, 543 F.2d 754 (5th Cir. 1926).

Injunctive restrictions on filing by abusive litigants are necessary and prudent in order to curb conduct that would impact the rights of other litigants and the Court's ability to carry out its Article III functions.  *Procup v. Strickland*, 792 F.2d 1069, 1071-72 (11th Cir. 1986).  Preventing repetitive or frivolous litigation does not violate one's rights to access the Courts.  *In re Chapman*, 328 F.3d 903, 905 (7th Cir. 2003).

In order to carefully observe the fine line between legitimate restraints and impermissible restrictions on the constitutional right to access to the courts, a variety of injunctive devises have been employed and approved. *Procup,* 792 F.2d 1069 at 1072.

For instance, in this Circuit where a Plaintiff has forced various defendants in and out of court for almost five years and had a full opportunity to present and litigate his claims, the district court did not abuse its discretion in dismissing an action for failure to prosecute and in enjoining any future litigation on a cause of action arising from the factual situation at issue. *Harrelson*, 613 F.2d at 116 (emphasis added).

Here, the Former Owner has a history of pro se litigation exceeding two years and entailing vexatious, harassing, and duplicative lawsuits involving the Property and his loss of the title thereto. The Former Owner's motive in pursuing the litigation is to harass the Homeowners and the Homeowners Association and he has no objective good-faith expectation of prevailing. The Former Owner, through the filing of sixteen (16) cases, including this matter and the recent Ejectment Action filed and pending in State Court, in little over two (2) years since the Foreclosure, has caused the Homeowners and the Homeowners Association needless expense and posed an unnecessary burden on the Courts and their personnel. This Court should further enjoin the Former Owner from filing any actions, pleadings, or documents relating to the Property and the Foreclosure.[5]

---

[4] In *Bonner v. City of Prichard, AL.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to close of business on September 30, 1981.

[5] This Court has the power to impose such filing restrictions against the Former Owner inasmuch as he filed the within action which has subjected him to this Court's personal jurisdiction and its inherent power to manage and control litigation coming before it. *In the Matter of Lamar Chapman, III*, 328 F.3d 903, 905 (7th Cir. 2003).

WHEREFORE, the Respondents/Defendants, HECTOR CASTRO, CARMELA BAUTISTA and SHERWOOD LAKES HOMEOWNERS ASSOCIATION, INC. respectfully request entry of an Order:

a. Striking Petitioner/Plaintiff's Petition to Confirm Final Arbitration Award; or

b. Alternatively, dismissing same for lack of subject matter jurisdiction; or

c. Alternatively, refusing to confirm and instead vacating said Arbitration Award; and,

d. Further enjoining the Petitioner/Plaintiff; and

e. Providing for such other and further relief as is just and proper.

Dated: October ___, 2019

Respectfully submitted,
/s/ Peter M. Armold
Peter M. Armold (660655)
pma@gdr-law.com; lm@gdr-law.com
GARY, DYTRYCH & RYAN, P.A.
701 U.S. Highway One, Suite 402
North Palm Beach, FL  33408
Tel.: (561) 844-3700
Fax: (561) 844-2388
Attorney for Defendants HECTOR CASTRO
ROSALES and CARMELA BAUTISTA

and

Dated: October ___, 2019                Respectfully submitted,

/s/ Agnieszka N. Chiapperini
Agnieszka N. Chiapperini (1010199)
achiapperini@gaebemullen.com
GAEBE, MULLEN, ANTONELLI & DIMATTEO
1818 South Australian Avenue, Suite 102
West Palm Beach, Florida 33409
Tel.: (561) 832-6788
Fax: (561) 835-1035
Attorney for Defendant SHERWOOD LAKES
HOMEOWNERS ASSOCIATION, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF on October ___, 2019, on all counsel or parties of record on the Service List below.

/s/ Peter M. Armold
Peter M. Armold (660655)

## SERVICE LIST

| Michael Anthony Henry Bey<br>P.O. Box 11774<br>Riviera Beach, Florida 33419-1774<br>apus197271@yahoo.com | Champery Real Estate 2015 LLC<br>Alexander M. Goerss, Esq.<br>Liebler, Gonzalez & Portuondo, P.A.<br>Courthouse Tower 25 Floor<br>44 West Flagler Street<br>Miami, Florida 33130<br>305-379-0400<br>Fax: 305-379-9626<br>amg@lgplaw.com |
| --- | --- |
| Duke Partners II, LLC<br>Alexander M. Goerss, Esq.<br>Liebler, Gonzalez & Portuondo, P.A.<br>Courthouse Tower 25 Floor<br>44 West Flagler Street<br>Miami, Florida 33130<br>305-379-0400<br>Fax: 305-379-9626<br>amg@lgplaw.com | Maxim Properties<br>Alexander M. Goerss, Esq.<br>Liebler, Gonzalez & Portuondo, P.A.<br>Courthouse Tower 25 Floor<br>44 West Flagler Street<br>Miami, Florida 33130<br>305-379-0400<br>Fax: 305-379-9626<br>amg@lgplaw.com |

F:\DOCS\PMA\5386 OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY\103 CASTRO, Hector & BAUTISA, Carmela (Henry-Bey, Michael Anthony) (Solomon, M.) (317507)\Joint Motion to Dismiss, et al. - version 2 to compare.wpd